UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-21702-Civ-LENARD
      (10-20410-Cr-LENARD)
MAGISTRATE JUDGE P.A. WHITE

DEXTER EARL KEMP,                :

      Movant,                    :

                                 :         REPORT OF
v.                               :      MAGISTRATE JUDGE

UNITED STATES OF AMERICA, :

      Respondent.                :

_____ :

## I. Introduction

This matter is before the Court on the movant's pro se motion to vacate filed pursuant to 28 U.S.C. §2255, attacking his convictions and sentences entered after jury trial in Case No. 10-20410-Cr-Lenard on nine grounds of ineffective assistance of trial counsel.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Cases in the United States District Courts.

The Court has reviewed the motion to vacate with attached exhibits and separate supporting memorandum of law (Cr-DE# 1389; Cv-DE# 1, 4), the government's response to an order to show cause with supporting exhibits (Cv-DE# 16), the Movant's Reply with attached exhibits (Cv-DE# 22), and all pertinent portions of the underlying criminal file.

## II. Facts

The case arose from investigations conducted by the Miami Gardens Police Department into sales of crack cocaine, cocaine, marijuana, and MDMA/Ecstasy. In early 2009, the local detectives met with Federal Bureau of Investigation ("FBI") Agents to enlist their assistance in investigating drug sales. The FBI used a confidential informant ("CI") to arrange drug purchases. On May 11, 2009, the CI called codefendant Shaheed Rashard Thompson ("Rashard Thompson") and asked to buy 7 grams of cocaine for $200. On May 20, 2009, the CI, wearing a body wire and under police surveillance, was told by Rashard Thompson to purchase 7 grams of cocaine from codefendant Antwan Roshax Gray ("Antwan Gray"). The CI then arranged to purchase another 7 grams from Antwan Gray on May 27, 2009, when the CI wore a recorder and a hidden camera. On June 10, 2009, the CI arranged to purchase 21 grams of cocaine for $600 from Antwan Gray, but received a bag of "cut," consisting of lidocaine and caffeine, which is not cocaine. When the CI refused to confront Antwan Gray about the faux cocaine, the FBI terminated his services.

Based on the information given by the CI and his drug purchases from Antwan Gray, the use of surveillance, pole cameras, pen registers, and other investigative methods, the FBI obtained a court order authorizing the wire intercept of Antwan Gray's mobile phone. Approximately 8,000 mobile and "walkie-talkie" calls were recorded. The wire intercepts recorded conversations between Antwan Gray and all of the defendants, with the exception of codefendant Rahmin J. Jefferson, and consisted of discussions of drugs deals, sources, and deliveries. The government's evidence at trial consisted primarily of the wiretapped recordings and testimony of police officers, federal agents, and cooperating co-defendants, who had pled guilty.

Specifically as to Kemp, the evidence admitted at trial, as succinctly summarized by the Eleventh Circuit Court of Appeals in its opinion issued on direct appeal, was as follows:

> FBI Agent Lofton testified Kemp was heard discussing drug dealing with Antwan Gray in the wiretapped calls. He was heard discussing marijuana, negotiating the purchase of it, and asking Antwan Gray to deliver drugs to a third party. Former co-defendant McMillian, who received drugs from Kemp from 2009 to 2010, testified that when he could not fill drug orders, he referred customers to Kemp. Sherline Richard testified Antwan Gray and Kemp met two or three times each week and supplied each other with MDMA. Richard also observed Kemp carrying a semiautomatic gun equipped with a laser beam.
>
> Several searches produced evidence used against Kemp during trial. On September 30, 2009, detectives observed Kemp's car departing from the house of a co-conspirator who later pled guilty; they stopped the vehicle because of excessively tinted windows. Kemp consented to a search and the detectives found MDMA pills and marijuana in the compartment behind the door handle.[fn 3] On November 18, 2009, while a search was occurring at Morley's home, officers again stopped Kemp for the excessively dark-tinted windows of his car. A drug dog alerted to marijuana in the trunk. A box containing 8 rounds of 9-millimeter cartridges was located in the compartment on the back of the front passenger's seat.
>
> On March 23, 2010, FBI Agent Lofton and other FBI agents went to another house on the street of "the four" to locate Kemp. During a protective sweep of the house, the officers observed marijuana residue in an open bag, a small digital scale, a metal sifter, and a bottle of prescription pills on the bedside table. The officers also found 48 baggies of marijuana hidden behind the television in Kemp's bedroom, a photograph of a birthday cake for Kemp labeled "Boss," and a button stating "MGT, BOSS" (referring to rap group "Myrtle Grove Taliban")[footnote and record references omitted]. In Kemp's closet the officers located a gun holster and a gun box for a Ruger 9-millimeter gun containing an empty magazine and magazine holder, the same caliber as ammunition found in Kemp's car on November 18, 2009. After waiving his *Miranda* rights,[fn 5] Kemp explained he had bought ammunition at a gun store in Hialeah, Florida, that did not conduct criminal background checks; the officers showed him the box for the Ruger 9-millimeter gun found in his bedroom, but Kemp insisted he no longer had it.
>
> > Fn.3 Following his arrest, Kemp called Antwan Gray from the back seat of the officers' vehicle and

> warned him to be careful because he had just been
> arrested with drugs.
>
> Fn.4 *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct.
> 1602, 16 L.Ed.2d 694 (1966).

United States v. Gray, 544 F.App'x 870, 878-79 (11th Cir. 2013).

## III. Procedural History

On November 9, 2010, Kemp, along with eight co-defendants, was charged in a Second Superseding Indictment. (Cr-DE# 460; Cv-16-1). Specifically, Kemp was charged with the offenses of conspiracy to possess with the intent to distribute fifty grams or more of a mixture and substance containing a detectable amount of cocaine base, commonly known as "crack," five hundred grams or more of a mixture and substance containing a detectable amount of cocaine, and fifty kilograms or more of marijuana and a detectable amount of 3-4 methylenedioxymethamphetamine (MDMA), commonly referred to as "Ecstasy" (Count 1); possession with intent to distribute less than 50 kilograms of marijuana (Count 3); possession of a firearm in furtherance of a drug trafficking crime (Counts 8 and 9); and possession of ammunition by a convicted felon (Count 10). Id.

Kemp entered pleas of not guilty to the offenses charged and the case was tried before a jury. Count 9 was dismissed during trial and the jury found Kemp guilty of the remaining offenses. (Cr-DE# 950). The Court adjudicated Kemp guilty of the subject offenses and he was sentenced as a career offender to a total term of imprisonment of 420 months' incarceration, consisting of 360 months as to Count 1 to run concurrently with 120 months as to Counts 3 and 10, and a consecutive 60 month term as to Count 8. (Cr-DE# 1104, 1250; Cv-DE# 16-2, 16-3).

Kemp prosecuted a direct appeal, along with seven of his

codefendants, challenging his convictions and sentences. <u>United States v. Gray</u>, 544 F. App'x 870 (11th Cir. 2013). He first argued that the evidence admitted at trial was insufficient to support his conviction for conspiracy to possess with intent to distribute controlled substances. <u>Id</u>. at 886-88 He contended that the evidence admitted at trial only established that he was an occasional purchaser and not a voluntary participant in the drug conspiracy. <u>Id</u>. He also maintained that the evidence did not support the jury's findings regarding the drug quantities involved in the conspiracy. <u>Id</u>. at 888, n.13. Kemp additionally argued that there was insufficient evidence to convict him of possession of a firearm in furtherance of a drug-trafficking crime, 18 U.S.C. §924(c), prosecuted under a *Pinkerton*[1] theory of vicarious liability. <u>Id</u>. at 889-91. According to Kemp, because codefendant Jefferson was acquitted of the conspiracy charge, he could not be liable for Jefferson's possession of a gun. <u>Id</u>. Kemp raised challenges to the jury instructions, contending that the instructions given misstated the permissible inferences about membership in a drug distribution conspiracy that can be drawn from a buyer-seller relationship and this Court erroneously refused to instruct the jury that conspiracy to possess narcotics is a lesser-included offense of conspiracy to possess with intent to distribute. <u>Id</u>. at 891-93. Besides challenging his convictions, Kemp appealed sentencing issues. He argued that this Court erred in calculating the drug quantities for his sentence and failed to make individualized drug quantity

---

[1]Under <u>Pinkerton v. United States</u>, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), "[e]ach party to a continuing conspiracy may be vicariously liable for substantive criminal offenses committed by a co-conspirator during the course and in the furtherance of the conspiracy, notwithstanding the party's non-participation in the offenses or lack of knowledge thereof," as long as "the substantive crime was a reasonably foreseeable consequence of the conspiracy." <u>United States v. Mothersill</u>, 87 F.3d 1214, 1218 (11th Cir. 1996)(citations and internal quotation marks omitted).

findings.[2] _Id_. at 895. Kemp argued that this Court erred in refusing to grant downward variances in his sentences. _Id_. Kemp also adopted various other arguments raised on direct appeal by his codefendants.

Kemp's convictions and sentences were affirmed by the Eleventh Circuit Court of Appeals in an unpublished written opinion issued on November 15, 2013. _Gray_, 544 F. App'x 870. _See also_ Cr-DE# 1364. Kemp did not seek review before the United States Supreme Court.[3] _See generally_, Docket in Case No. 10-20410-Cr-Lenard.

## IV. §2255 Proceedings

After waiting for more than one year after the direct appeal proceeding had concluded, Movant instituted this collateral proceeding pursuant to 28 U.S.C. §2255 on April 29, 2015.[4] _See_ Cr-DE# 1389; Cv-DE# 1, 4. The government has filed a response, arguing that Movant is not entitled to collateral relief, because the motion is untimely filed and/or the claims are meritless. _See_ Cv-DE# 16. The Court agrees with the government that Movant is not entitled to review on the merits of the claims raised since they are time-barred. The alternate argument advanced by the government

---

[2]In a supplemental brief, Kemp attempted to raise a new sentencing issue based on _Alleyne v. United States_, ___ U.S. ___, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), arguing that his Sixth Amendment rights had been violated when prior felony-drug convictions were relied upon to enhance his sentence, although the prior convictions were not set forth in the Indictment or found by the jury to have occurred as a matter of fact. The Eleventh Circuit held that Kemp had waived the new issue. _United States v. Gray_, 544 F.App'x 870, 896 n.19 (11th Cir. 2013). The Eleventh Circuit also noted that the Supreme Court in _Alleyne_ expressly held that the rule that a judge may find the fact of a prior conviction was not disturbed. _Alleyne_, 133 S.Ct. at 2160 n.1.

[3]Kemp's assertion to the contrary will be addressed in Section IV of this Report.

[4]The Eleventh Circuit recognizes the "mailbox" rule in connection with the filing of a prisoner's pleadings. _Adams v. United States_, 173 F.3d 1339 (11th Cir. 1999)(prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

also appears meritorious, but need not be addressed in that the time-bar argument is clearly dispositive of the instant motion to vacate.

As a starting point, the Court turns to the date upon which Movant's judgment of conviction became final under 28 U.S.C. §2255(f)(1).[5] "Finality attaches when [the United States Supreme Court] affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires.". <u>Clay v. United States</u>, 537 U.S. 522, 527, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003). The government argues that the subject convictions and sentences became final on February 13, 2014, when the ninety-day period to file a petition for writ of certiorari expired. <u>See</u> Response in Opposition to Motion to Vacate at 12-3. (Cv-DE# 16). Kemp asserts that he filed a petition for certiorari to the United States Supreme Court, therefore, his convictions and sentences did not become final until May 28, 2014, when the petition was denied.

Kemp's assertion is belied by the record. As indicated above, Kemp joined seven of his codefendants in a consolidated direct

---

[5] Section 2255(f) sets a one-year limitations period running from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant is prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

appeal before the Eleventh Circuit Court of Appeals. <u>See</u> <u>Gray</u>, 544 F.App'x 870, 874. The Eleventh Circuit's opinion, affirming the convictions and sentences, issued on November 15, 2013. Three of Kemp's codefendants did seek certiorari review before the United States Supreme Court, Shaheed Rashard Thompson, Artrell Terrance Gray, and Antwan Roshax Gray, and their petitions were denied on March 24, 2014, and May 27, 2014, respectively. <u>See</u> <u>Thompson v. United States</u>, No. 13-8797, ____ U.S. ____, 134 S.Ct. 1571, 188 L. Ed. 2d 580 (March 24, 2014); <u>Gray v. United States</u>, No. 13-9889, ____ U.S. ____, 134 S. Ct. 2686, 189 L. Ed. 2d 227 (May 27, 2014). <u>See also</u> Cr-DE# 1361, 1362. The denial of the writ of certiorari as to codefendants Antwan Roshax Gray and Artrell Terrance Gray was entered on this Court's docket on May 28, 2014. (Cr-DE# 1362).

Kemp attempts to support his assertion that he too sought *certiorari* review with a copy of what appears to be email correspondence between appellate counsel Allen P. Pegg and Rosa, Dexter's mother, dated August 11, 2015. <u>See</u> Email from Allen P. Pegg dated August 11, 2015. (Exhibit attached to Reply)(Cv-DE# 22). The email states in pertinent part as follows:

> In Dexter's appeal, there was a petition for certiorari filed with the US Supreme Court. That petition was filed from the very same appeal and very same district court case (12-10990 for the appeal and 10-20410 for the district court case) as Dexter's. If the Supreme Court had granted certiorari and reversed the convictions for the reasons argued in the petition, I believe that relief would have affected Dexter's conviction. The Supreme Court denied the petition for certiorari on May 28, 2014. Dexter filed his habeas petition less than a year thereafter. Under Clay v. United States, 537 US 416, the petition should be deemed timely. The government's argument fails to recognize that there was a petition for certiorari filed in Dexter's case.

<u>Id</u>.

The now-relied upon correspondence, sent subsequent to the

8

filing of the instant §2255 motion, does not state that a petition for writ of certiorari was filed by Kemp, through counsel or *pro se*. Id. The correspondence merely indicates that *a* petition for certiorari had been filed from the Eleventh Circuit's opinion. Id. Furthermore, the date of the denial of the petition for writ of certiorari referred to by appellate counsel in the correspondence is May 28, 2014. Id. That date corresponds with the entry on this Court's docket of the denial of codefendants Antwan Roshax Gray and Artrell Terrance Gray's petition for writ of certiorari. See Cr-DE# 1362. The undersigned's full and careful review of the records of this Court and the records of the Eleventh Circuit Court of Appeals has shown that no petition for writ of certiorari was ever filed by Kemp. *See generally*, Docket in Case No. 10-20410-Cr-Lenard; Docket in Case No. 12-10990 (11th Cir.). Any possible belief on the part of Kemp and/or appellate counsel that Kemp had filed a petition for writ of certiorari is erroneous.

With the correct date of finality in mind, Kemp's convictions and sentences became final on February 13, 2014, when the ninety-day period to file a petition for writ of certiorari expired, as asserted by the government. Clay, 537 U.S. at 527. Accordingly, in order for Movant's motion to vacate to be timely, it must have been filed in this Court on or before February 13, 2015. The instant motion to vacate was not filed until April 29, 2015, more than two months after the applicable limitations period had already expired.

Although Kemp maintains that the instant §2255 motion to vacate has been timely filed, when reading the motion to vacate, supporting memorandum of law and reply liberally,[6] it appears that

---

[6]It is well settled that pro se filings are subject to less stringent pleading requirements and should be liberally construed with a measure of tolerance. See Haines v. Kerner, 404 U.S. 519 (1972). See also Gomez-Diaz v. United States, 433 F.3d 788, 791 (11th Cir. 2005); Diaz v. United States, 930

Kemp may be contending that the instant motion to vacate should be deemed timely filed pursuant to §2255(f)(3) in that certain cited Supreme Court decisions trigger new limitations periods and/or he is entitled to equitable tolling of the limitations period. Kemp is mistaken.

Kemp cites <u>Rosemond v. United States</u>, ___ U.S. ___, 134 S.Ct. 1240 (March 5, 2014)[7] with regard to his challenge to the §924(c) conviction entered as to Count 8. <u>See</u> Memorandum of Law in Support of 28 U.S.C. §2255 at 44-9. (Cv-DE# 4). The undersigned first notes that the instant §2255 motion has not been filed within the one-year period after <i>Rosemond</i> was decided, rendering it time-barred on this basis alone. Even if the motion to vacate had been filed within the one-year period, reliance upon this Supreme Court case does not result in an extension of the limitations period or relief.

The consensus among courts which have addressed this issue have determined that, because the holding in <i>Rosemond</i> was dictated by established precedent, <i>Rosemond</i> does not apply retroactively to cases on collateral review. <u>See</u> <u>Cover v. United States</u>, 2016 WL 323607, *3 (D.R.I. Jan. 26, 2016)(holding that <i>Rosemond</i> was not retroactive in that it did not change, but, rather, clarified substantive law and did not fall within either exception to the <i>Teague</i>[8] bar); <u>Aquil v. Butler</u>, 2015 WL 1914404, *4 n.7, 4-5

_____

F.2d 832, 834 (11th Cir. 1991).

[7]In <i>Rosemond</i>, the Supreme Court explained that "[a]n active participant in a drug transaction has the intent needed to aid and abet a §924(c) violation when he knows that one of his confederates will carry a gun." <u>Rosemond v. United States</u>, 134 S.Ct. 1240, 1249 (2014). A conviction for aiding-and-abetting "requires not just an act facilitating one or another element, but also a state of mind extending to the entire crime." <u>Id</u>. at 1248. Further, "the intent must go to the specific and entire crime charged." <u>Id</u>.

[8]<u>Teague v. Lane</u>, 489 U.S. 288 (1989).

(E.D.Ky. April 27, 2015)(agreeing with conclusion of various courts that *Rosemond* does not apply retroactively to cases on collateral review such as the §2241 petition before the court and compiling cases), *citing,* United States v. Davis, 750 F.3d 1186, 1192-93 (10th Cir. 2014)(suggesting prospective application only: "After *Rosemond*, a jury instruction on aiding and abetting §924(c) should address the defendant's advance knowledge of the gun."); Watford v. Matevousian, 2015 WL 1498859, *3 (E.D.Cal. Mar. 31, 2015)(refusing to apply *Rosemond* retroactively to prisoner's §2241 petition because the Supreme Court did not identify its holding as retroactively applicable); Watford v. Copenhaver, 2014 WL 4967800, *2 (E.D.Cal. Dec. 8, 2014)(same); Montana v. Cross, 2014 WL 5091708, *3 (S.D.Ill. Oct. 10, 2014)(denying §2241 petition because petitioner's reliance on *Rosemond* "does not bring his claim within the savings clause," and stating, "The Supreme Court gave no indication that its decision in *Rosemond* should be given retroactive application to a case on collateral review."); Taniguchi v. Butler, 2014 WL 5063748, *5 (E.D.Ky. Oct. 8, 2014)(denying federal prisoner's §2241 habeas petition based on *Rosemond* claim); United States v. Foreman, 2014 WL 4403445, *1 (N.D.Okla. Sept. 5, 2014); Rainwater v. Werlich, 2014 WL 4218346, *2 (W.D.La. Aug. 25, 2014)(finding §2241 relief unavailable through the savings clause of §2255(e) because *Rosemond* has not been declared retroactively applicable by Supreme Court); Rodriguez-Pena v. Werlich, 2014 WL 4273631, *2 (W.D.La. Aug. 29, 2014)(relief not available in §2241 under savings clause of §2255(e) because Supreme Court did not make *Rosemond* retroactively applicable); Minaya v. United States, 41 F.Supp.3d 343, 345 (S.D.N.Y. Aug. 19, 2014)(finding *Rosemond* and another related Supreme court case not retroactively applicable to cases on collateral review); Gentile v. Fox, 2014 WL 3896065, *9 (C.D.Cal. July 11, 2014)("The [*Rosemond*] case did not involve an actual innocence claim, but rather merely

an instructional error claim, and there is no indication in the decision that rule declared therein regarding what it takes to aid and abet a §924(c) offense would apply retroactively on collateral review."); <u>Martinez v. United States</u>, 2014 WL 3361748, *2 (N.D.Tex. July 9, 2014)(concluding *Rosemond* does not announce a substantive rule and is not retroactive). Since it does not appear that *Rosemond* should be given retroactive application to cases on collateral review, the instant motion to vacate is time-barred.

Kemp additionally challenges his career offender as unlawful on various grounds, including the ground that trial counsel was ineffective for failing to challenge the residual clause of the Career Offender Statute. <u>See</u> Memorandum of Law in Support of 28 U.S.C. §2255 at 29-31; Reply at 12-3. (Cv-DE# 4, 22). Kemp essentially contends that he was improperly sentenced as a career offender under the United States Sentencing Guidelines pursuant to <u>Johnson v. United States</u>, ___ U.S. ___, 135 S.Ct. 2551, 192 L.Ed.2d 56983 (June 26, 2015) and <u>Descamps v. United States</u>, 570 U.S. ___, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013).

Kemp's reliance on *Johnson* is misplaced either as a way of extending the limitations period pursuant to §2255(f)(3) or as a substantive ground for relief. While the instant §2255 motion to vacate was filed within one year of the date *Johnson* was issued, June 26, 2015, the Supreme Court did not expressly address the retroactivity of *Johnson* or its availability as a basis for collateral relief. The Supreme Court recently granted certiorari to decide "[w]hether *Johnson* ... announced a new substantive rule of constitutional law that applies retroactively to cases that are on collateral review." <u>Welch v. United States</u>, 136 S.Ct. 790 (Jan. 8, 2016). It is unnecessary to hold this particular case in abeyance pending the outcome of *Welch*, however, because the sentence

12

challenge would fail on the merits even if it was timely.

Kemp's attack on his career offender sentence under the Sentencing Guidelines is unavailing. In *Johnson*, the Supreme Court held that the residual clause of the Armed Career Criminal Act is unconstitutionally vague. The Armed Career Criminal Act increases sentences for certain offenders who have three previous convictions for violent felonies or serious drug offenses. 18 U.S.C. §924(e)(1). The definition of "violent felony" under the Act is nearly identical to the definition of "crime of violence" under the guidelines, and both definitions contain an identical residual clause that include crimes that "present[] a serious potential risk of physical injury to another." 18 U.S.C. §924(e)(2)(B); U.S.S.G. § 4B1.2(a)(2). Although the residual clause contained in the career offender enhancement residual clause is virtually identical to the ACCA's residual clause, the Eleventh Circuit has expressly rejected the argument that the advisory guidelines can be unconstitutionally vague, concluding that the vagueness doctrine applies only to laws that prohibit conduct and fix punishments, not advisory guidelines." United States v. Matchett, 802 F.3d 1185, 1189, 1193-96 (11th Cir. 2015). Therefore, the Eleventh Circuit has "squarely foreclose[d]" the Movant's *Johnson*-based argument. United States v. Brown, 2015 WL 9301410 (11th Cir. Dec. 22, 2015).

Moreover, *Johnson* is factually inapplicable to Movant's case. Kemp's criminal history includes convictions for serious violent and controlled substance felony offenses, including: (1) armed robbery with a firearm (PSI at ¶81); (2) carrying a concealed firearm (PSI at ¶82); (3) possession with intent to sell, manufacture or deliver cocaine (PSI at ¶82); (4) felon in possession of a firearm or weapon (PSI at ¶82); and (5) possession with intent to sell, manufacture or deliver cannabis (PSI at ¶83).

13

Kemp clearly qualified as a career offender based on his prior felony convictions. The residual language in 4B1.2(a)(2) is not at issue in this case. Even if the United States Supreme Court held that the guidelines' residual clause is also unconstitutionally vague, such holding would not affect the Movant's career offender classification in that it is not based on the Guidelines' residual language. Similarly, the Supreme Court's holding in *Descamps*[9] is inapplicable to the instant case in that Kemp was sentenced as a career offender and not under the ACCA so *Descamps* has no impact whatever on the limitations period or Kemp's claim on the merits.

Kemp next seems to argue that he is entitled to equitable tolling of the limitations period on the basis of actual innocence of the §924(c) offense. See Memorandum of Law in Support of 28 U.S.C. §2255 at 44-9. (Cv-DE# 4). He claims that the government did not prove that he had advanced knowledge that a coconspirator would carry and/or use a firearm in furtherance of the drug trafficking charges. Id. The United States Supreme Court has held that actual innocence, if proved, can serve as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), and House v. Bell, 547 U.S. 518, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006), or expiration of the AEDPA statute of limitations as it was in McQuiggin v. Perkins, ___ U.S. ___, 133 S.Ct. 1924,

---

[9]In *Descamps*, the Supreme Court clarified the test for which prior convictions constitute violent felonies for purposes of the Armed Career Criminal Act (the "ACCA"), 18 U.S.C. §924(e). The Supreme Court in *Descamps* held that courts may not apply the modified categorical approach to sentencing under the Armed Career Criminal Act when the crime of which the defendant was convicted has a single, indivisible set of elements. Id. The Court, thereby, reaffirmed the application of a "formal categorical approach" to determine whether a prior conviction counts as a predicate offense for ACCA purposes, and generally prohibited sentencing courts from looking beyond the statutory elements of a crime to the facts underlying the prior convictions.

185 L.Ed.2d 1019 (2013).[10] "To establish actual innocence, [a habeas petitioner] must demonstrate that ... 'it is more likely than not that no reasonable [trier of fact] would have convicted him.' Schlup v. Delo, 513 U.S. 298, 327-328, 115 S.Ct. 851, 867-868, 130 L.Ed.2d 808 (1995)." Bousley v. United States, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "[T]he *Schlup* standard is demanding and permits review only in the "'extraordinary' case." House, 547 U.S. at 538. Thus, "[i]n the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of [untimely] claims." Id. at 537.

*Schlup* observes that "a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.... To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup, 513 U.S. at 324. "Actual innocence" requires the petitioner to show "factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623.

This Court may, therefore, consider Movant's untimely §2255 motion to vacate if, by refusing to consider the motion to vacate

---

[10]The Eleventh Circuit had before the Supreme Court decision in *McQuiggin* already recognized an equitable exception to AEDPA's statute of limitations based on a credible showing of actual innocence. See San Martin v. McNeil, 633 F.3d 1257, 1267-68 (11th Cir.)(recognizing an actual innocence exception in the context of an untimely section 2254 habeas petitioner and stating, "[a] court also may consider an untimely §2254 petition if, by refusing to consider the petition for untimeliness, the court thereby would endorse a fundamental miscarriage of justice because it would require that an individual who is actually innocent remain imprisoned.")(quotation omitted), *cert. denied sub nom.*, San Martin v. Tucker, ___ U.S. ___ , 132 S.Ct. 158, 181 L.Ed.2d 73 (2011).

for untimeliness, this Court thereby would endorse a "fundamental miscarriage of justice" if Movant was actually innocent. Movant has failed to make the requisite showing of actual innocence that would support consideration of his untimely §2255 motion on the merits. Stated differently, Movant has failed to provide evidence sufficient to satisfy the threshold showing required by *Schlup.*

As argued by the government, Kemp presents no new evidence whatever, let alone any "new reliable evidence," to support his claim of actual innocence of the subject crime nor has he suggested that this requisite evidence exists so as to meet the stringent standard. See House v. Bell, 547 U.S. 518. Further, full and careful review of Movant's arguments reveal that his claims involve legal innocence and not factual innocence, as is required by *Schlup* and its progeny.[11] Bousley, 523 U.S. at 623-24. See also Sawyer v. Whitley, 505 U.S. 333, 339, 112 S.Ct. 2514, 2518-2519, 120 L.Ed.2d 269 (1992)(noting that the miscarriage of justice exception is concerned with actual as compared to legal innocence). Therefore, Movant fails to demonstrate actual innocence, and his claims remain barred by the one-year filing limitation.

Moreover, Kemp is not entitled to collateral relief on his claim that, because codefendant Jefferson had been acquitted of the conspiracy charge, he cannot be liable for Jefferson's possession

---

[11]For example, Movant's arguments involve insufficiency of the evidence to convict him. As the *Schlup* decision explains, the gateway actual-innocence standard is "by no means equivalent to the standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)," which governs claims of insufficient evidence. Schlup, 513 U.S. 298, 330 (1995). Movant's assertion of insufficient evidence, therefore, does not support his claim of actual innocence. See Justo v. Culliver, 317 F.App'x 878 (11th Cir. 2008)(actual innocence showing insufficient where petitioner who entered guilty plea simply attacked sufficiency of the indictment and presented no new evidence)(unpublished); Rich v. Department of Corrections, 317 F.App'x 881 (11th Cir. 2008)(actual innocence exception inapplicable because petitioner presented no new evidence and merely argued the state's evidence was insufficient)(unpublished).

of a gun. The identical claim was raised and rejected as meritless by the Eleventh Circuit Court of Appeals on direct appeal based upon the evidence admitted at trial in conjunction with applicable principles of law.[12] See Gray, 544 F.App'x at 889-91. In resolving the issue, the Eleventh Circuit made clear that it agreed with the Fifth Circuit's holdings that, even if a defendant's co-conspirator had been unindicted or acquitted on the conspiracy charge, the evidence can still be sufficient to sustain a defendant's conviction. Id. at 890, *citing*, United States v. Dean, 59 F.3d 1479, 1490 n.19 (5th Cir. 1995). It is well settled that an alleged error "'decided adversely to a defendant on direct appeal ... cannot be re-litigated in a collateral attack under section 2255.'" United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000)(citation omitted). The claim may not be relitigated in this §2255 proceeding under the guise of ineffective assistance of trial counsel. Id.

To the extent that Kemp is raising a claim not earlier presented on direct appeal, such as, the government also had to prove that he actually knew to a certainty that a codefendant would actually brandish the gun, the Eleventh Circuit has more recently held that even *Rosemond* does not require such knowledge to sustain a §924(c) conviction. See United States v. Maddox, 803 F.3d 1215, 1222 n.3 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 852 (2016), *citing*, United States v. Payne, 763 F.3d 1301, 1304 n.2 (11th Cir.

---

[12]For example, the Eleventh Circuit stated in relevant part when addressing the issue:

> Richard testified Kemp carried a semi-automatic weapon. Officers found cartridges and a holder for a magazine in Kemp's car, and a gun box and an empty magazine were located in his residence. This evidence is sufficient to establish Kemp reasonably could have foreseen a co-conspirator would carry a firearm in furtherance of the drug-distribution conspiracy.

United States v. Gray, 544 F. App'x 870, 890 (11th Cir. 2013).

2014)(holding that *Rosemond* required only that a defendant know
that one of his confederates was carrying a gun; it did not require
knowledge that this confederate would brandish the gun.). See also
Jones v. United States, 2015 WL 2169236, at *8 (N.D.Ga. May 8,
2015)(holding that lack of sufficient evidence to support a
conviction for aiding and abetting a §924(c) crime does not
foreclose a conviction based on *Pinkerton* liability "on the basis
that it was reasonably foreseeable ... that a co-conspirator would
have a gun.")(*quoting,* United States v. Rodriguez, 2015 WL 249356,
*7 (11th Cir. Jan. 21, 2015).

        Finally, Movant apparently argues in his reply that he should
be excused from the limitations period based upon his *pro se*
status. See Reply at 1, n.1. (Cv-DE# 22). A movant's *pro se* status
or ignorance of the law do not constitute "extraordinary
circumstances" supporting equitable tolling.[13] See Johnson v. United
States, 544 U.S. 295, 311, 125 S.Ct. 1571, 1582 (2005)(stating that
"the Court has never accepted *pro se* representation alone or
procedural ignorance as an excuse for prolonged inattention when a
statute's clear policy calls for promptness."); Rivers v. United
States, 416 F.3d 1319, 1323 (11th Cir. 2005)(holding that while
movant's lack of education may have delayed his efforts to vacate
his state conviction, his procedural ignorance is not an excuse for
prolonged inattention when promptness is required). See also Felder
v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000)(holding that
petitioner's *pro se* status and ignorance of the law are not "rare
and exceptional" circumstances because they are typical of those

_____

        [13]It is well accepted that pro se filings are subject to less stringent
pleading requirements, Estelle v. Gamble, 429 U.S. 97, 106 (1976), and should be
liberally construed with a measure of tolerance. See Haines v. Kerner, 404 U.S.
519 (1972). See also Gomez-Diaz v. United States, 433 F.3d 788, 791 (11th Cir.
2005); Diaz v. United States, 930 F.2d 832, 834 (11th Cir. 1991). However, the
policy of liberal construction for pro se litigants' pleadings does not extend
to a "liberal construction" of the one-year limitations period.

bringing §2254 claims"); <u>Marsh v. Soares</u>, 223 F.3d 1217 (10th Cir. 2000)(holding that federal habeas petitioner was not entitled to equitable tolling of limitations period; neither inmate's ignorance of the law, nor fact that inmate law clerk working through prison legal access program helped draft petition, excused prompt filing); <u>Carrasco v. United States</u>, 2011 WL 1743318, *2-3 (W.D.Tex. 2011)(finding that movant's claim that he just learned of *Padilla* decision did not warrant equitable tolling, although movant was incarcerated and was proceeding without counsel, because ignorance of the law does not excuse failure to timely file §2255 motion); <u>Holloway v. Jones</u>, 166 F.Supp.2d 1185 (E.D.Mich. 2001)("Claims that a petitioner did not have professional legal assistance are not an extraordinary circumstance which would toll the statute of limitations.").

In conclusion, Movant did not file his §2255 motion within one-year of the applicable limitations period. He has failed to show that he is entitled to be excused from the applicable limitations period for any or all the reasons provided. Nothing other than Movant's own lack of due diligence is responsible for the untimeliness of the filing of the instant motion to vacate. Thus, for all the reasons stated above, Movant is not entitled to review on the merits of his challenges to his convictions and sentences raised in this §2255 proceeding.

## V. <u>Evidentiary Hearing</u>

Movant has sought an evidentiary hearing. Movant is not entitled to an evidentiary hearing on the limitations issue and/or the claims raised in this proceeding. Movant has the burden of establishing the need for an evidentiary hearing, and he would only be entitled to a hearing if his allegations, if proved, would establish his right to collateral relief. See <u>Schriro v. Landrigan</u>,

550 U.S. 465, 473-75, 127 S.Ct. 1933, 1939-40, 127 S.Ct. 1933 (2007)(holding that if record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing). See also Townsend v. Sain, 372 U.S. 293, 307 (1963); Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), citing, Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979)(holding that §2255 does not require that the district court hold an evidentiary hearing every time a section 2255 petitioner simply asserts a claim of ineffective assistance of counsel, and stating: "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.").

## VI. Certificate of Appealability

As amended effective December 1, 2009, §2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rules Governing §2255 Proceedings, Rule 11(b), 28 U.S.C. foll. §2255.

After review of the record, Movant is not entitled to a certificate of appealability. "A certificate of appealablilty may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Id. 28 U.S.C. §2253(c)(2). To merit a certificate of appealability, Movant must show that reasonable jurists would find debatable both (1) the merits of the

underlying claims and (2) the procedural issues he seeks to raise. Slack v. McDaniel, 529 U.S. 473, 478, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). See also Eagle v. Linahan, 279 F.3d 926, 935 (11th Cir. 2001). Because the §2255 motion is clearly time-barred, Movant cannot satisfy the *Slack* test. Slack, 529 U.S. at 484.

As now provided by Rules Governing §2255 Proceedings, Rule 11(a), 28 U.S.C. foll. §2255: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## VII. Recommendations

Based on the foregoing, it is recommended that the motion to vacate be dismissed with prejudice as time-barred, and no certificate of appealability should issue.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 19th day of February, 2016.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Dexter Earl Kemp, Pro Se
     Reg.# 83049-004
     Jail# 150131766
     Miami-Dade County-PDC
     Pretrial Detention Center
     1321 NW 13th Street
     Miami, FL 33125

Juan Antonio Gonzalez, Jr., AUSA
United States Attorney's Office - H.I.D.T.A.
11200 NW 20th Street
Suite 101
Miami, FL 33172